# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TERENCE JOSE MANNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV8 |
| | ) | |
| DVA WELL PATH CORRECT CARE | ) | |
| SOLUTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon a motion for summary judgment by Defendant Danny Rogers.[1] (Docket Entry 81.) Plaintiff Terence Jose Manning has not filed a response. For the reasons stated herein, the Court will recommend that Defendant's motion for summary judgment be granted and that this action be dismissed.

## I. BACKGROUND

Plaintiff, a *pro se* prisoner proceeding *in forma pauperis*, initiated this action in the Eastern District of North Carolina on December 23, 2019.[2] (Compl., Docket Entry 1; *see also* Docket Entry 2.) The case was then transferred to this district. (Docket Entries 3, 4.) Plaintiff's complaint raises claims against healthcare provider DVA Well Path Correct Care Solutions

---

[1] Plaintiff incorrectly spelled this Defendant's last name as "Rodgers" in the complaint. (*See* Compl. at 3.) Based on his own affidavit, the correct spelling of this defendant's last name is "Rogers." (*See* Docket Entry 83.) The undersigned will use the correct spelling herein.

[2] The signature date on Plaintiff's complaint is November 18, 2019, but the document was filed with the Eastern District on December 23, 2019. (*See* Docket Entry 1 at 1, 10.)

("Well Path"), Guilford County Sheriff Danny Rogers, and Well Path employee Tanya Cabarrus-Dubois for inadequate medical care and unspecified constitutional violations pursuant to 42 U.S.C. § 1983 arising from incidents occurring while he was housed as a pretrial detainee at the Guilford County Detention Center ("GCDC") in Greensboro, North Carolina. (*See generally* Compl.)  Defendant Well Path and Defendant Tanya Cabarrus-Dubois have already been dismissed from this action. (*See* Docket Entries 67, 80, 88, 90.)

Specifically, Plaintiff alleges that on July 30, 2019, he was escorted to an off-site appointment with Dr. Kevin Haddix to have an "external fixture" taken out of his arm. (*Id.* at 5.)[3]  Plaintiff states that he had previously been in a car accident during which he sustained injuries to his arm. (*Id.*)  At the appointment, Dr. Haddix allegedly informed Plaintiff that he needed to return in six weeks for further evaluation and to set a date for surgery to insert an artificial bone into Plaintiff's wrist. (*Id.* at 5, 7.)  Dr. Haddix also told Plaintiff that he should not "use [his] right hand or do anything to put strain on it." (*Id.* at 7.)  Plaintiff states that he made repeated inquiries to the medical staff at the jail between September and November 2019 to determine when his follow-up appointment with Dr. Haddix would occur. (*Id.* at 5-6.)  Plaintiff alleges that he wrote two sick call requests regarding the treatment of his wrist without getting any response. (*Id.* at 6.)   He further alleges that he "verbally informed" Defendant Rogers about the situation, but no actions were taken in response. (*Id.*)  As of the date that Plaintiff prepared his Complaint (November 18, 2019), he still did not know when he would next be seen by Dr. Haddix. (*Id.*)

---

[3] All citations in this recommendation refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system unless otherwise indicated.

Case 1:20-cv-00008-CCE-JLW   Document 91   Filed 06/14/21   Page 2 of 22

Plaintiff alleges that due to the delay in treatment, scar tissue began hardening in his wrist, restricting its movement and causing him increasing pain. (*Id.* at 6-7.) He states that his wrist and arm have shrunk because of the brace he wears constantly. (*Id.* at 7.) He alleges further that other inmates have had to feed him because he was unable to do so himself and "the nurses [at the jail] wouldn't do it." (*Id.* at 6.)

In his complaint, Plaintiff indicates that he has not successfully filed a grievance concerning his wrist. (*Id.* at 8.) He alleges that he has requested grievances related to his medical care but has not been given one. (*Id.*) Plaintiff states that inmates only receive a grievance "if the jail staff feels it's a grievable offense." (*Id.* at 7.) He specifically states that he requested grievance on October 6, 2019 through the jail's kiosk system but received no response. (*Id.* at 8.)

Defendant Rogers was served with a summons and a copy of the complaint in this matter in March 2020. (*See* Docket Entries 7, 9.) Defendant Rogers filed an answer to Plaintiff's complaint on May 9, 2020 and an amendment thereto on May 19, 2020. (Docket Entries 15, 18.) Following the completion of discovery, Defendant Rogers filed the foregoing motion for summary judgement on March 15, 2021. (Docket Entry 81.) The Clerk of Court issued a *Roseboro* letter[4] to Plaintiff advising him of his right to respond to the motion for summary judgement. (Docket Entry 87.) However, Plaintiff has not filed any response to Defendant's motion or otherwise communicated with the Court since December 3, 2020. (*See* Docket Entry 62.)

---

[4] This notice sent pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975) advises *pro se* plaintiffs of their right to file responses to dispositive motions filed by defendants.

# I. DISCUSSION

As an initial matter, because Plaintiff "fail[ed] to file a response [to Defendant's motion to dismiss] within the time required by [this Court's Local Rules], the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession). "Plaintiff's status as a *pro se* litigant does not excuse his inaction." *Simpson v. Hassan*, No. 1:08CV455, 2014 WL 3547023, at *1 n.4 (M.D.N.C. July 16, 2014) (unpublished). Alternatively, as explained below, the Court should grant Defendant Rodger's motion for summary judgement on the merits.

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817

4

(4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and a court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson*, 477 U.S. at 248-49.

Defendant Rogers moves for summary judgment as to all of Plaintiff's claims against him. (Docket Entry 81 at 1.) In support of his motion for summary judgement, Defendant Rogers incorporates his own affidavit and affidavits of Well Path physician Dr. Muhammad Wasi Haq, Detention Captain C. Johnson, and Detention Officer M. Diehl, along with various other exhibits, which will be described in further detail below. (*See* Docket Entries 82, 83, 84, 85 and exhibits.) Defendant Rogers argues that summary judgment is warranted for three primary reasons: 1) Plaintiff failed to exhaust his administrative remedies; 2) to the extent that Plaintiff's complaint raises medical malpractice claims against Defendant Rogers, such claims should be dismissed because Plaintiff failed to comply with the requirements of North Carolina Rule of Civil Procedure 9(j), his allegations raise no genuine issue of material fact, and Defendant Rogers is entitled to public officials' and governmental immunity as to these claims; and 3) Plaintiff has not demonstrated that Defendant Rogers, in either his official or

5

individual capacity, was deliberately indifferent to Plaintiff's serious medical needs. (*See generally* Docket Entry 86.) The undersigned addresses each of these arguments below.

## A. <u>Failure to exhaust administrative remedies</u>

First, Defendant Rogers argues that he is entitled to summary judgment as to all of Plaintiff's claims because Plaintiff did not exhaust his administrative remedies prior to filing his lawsuit. (Docket Entry 86 at 7-9.) The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires inmates to properly exhaust administrative remedies before filing civil actions challenging the conditions of their confinement. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore*, 517 F.3d at 725. The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It is well-settled by now that Section 1997e's exhaustion requirement is mandatory. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 90-91 (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676–77 (4th Cir. 2005) (citing *Porter*, 534 U.S. at 524).

In support of his argument that Plaintiff failed to comply with the PLRA, Defendant Rogers refers to the affidavits of Detention Captain C. Johnson and Detention Officer M. Diehl, in addition to the attached copies of the Guilford County Sheriff' Office's Detention Bureau General Orders, inmate handbook, and request forms submitted by Plaintiff. (*See generally* Johnson Aff., Docket Entry 84; Diehl Aff. Docket Entry 85; Docket Entries 84-1, 84-2, 85-1, 85-2, 85-3.)

According to Captain Johnson, who serves as one of the GCDC managers, the jail's "grievance policy is explained to inmates upon their arrival." (*Id.* ¶¶ 1, 8.) All inmates are informed that a copy of the inmate handbook is available for them to review upon request. (*Id.*) Inmate Request Forms ("IRFs") are available to inmates upon request or through the jail's kiosks. (*Id.* ¶ 10.) Jail officers attempt to resolve complaints informally first, but if the resolution is not satisfactory to the inmate, the inmate may request an IRF and use that form to request a grievance form. (*Id.* ¶ 11.) The formal grievance process begins with the filing of a properly completed grievance form within three days of the incident or reasonable discovery. (*See id.* ¶¶ 11-14.)

In his affidavit, GCDC Detention Officer Diehl explains that one of his job responsibilities is to serve as a records custodian for the jail's inmate files, which contain incident reports and any IRFs or grievances submitted by inmates. (Diehl Aff. ¶ 1.) Officer Diehl also has access to inmate medical records but indicates that any requests submitted by an inmate related to medical care are exclusively handled by Well Path employees. (*Id.* ¶ 6.)

Upon review of the jail's records between June 25, 2019 (the date Plaintiff arrived at GCDC) and November 18, 2019 (the date Plaintiff signed his complaint), Officer Diehl identified only two requests submitted by Plaintiff. (*Id.* ¶¶ 6-7.) First, on October 6, 2019 Plaintiff submitted a request regarding treatment of his wrist through the "Medical Records JC" system and requested a grievance to address the problem within his medical request. (*Id.* ¶ 6.) Because Plaintiff submitted his request to "Medical Records JC," it was directed to the Well Path staff for resolution, not the general jail staff. (*Id.*) Second, on November 2, 2019, Plaintiff submitted a request through the "Other JC" system complaining about delays in

7

seeing Dr. Haddix for follow-up treatment on his wrist. (*Id.* ¶ 7; *see also* Docket Entry 85-1.) Within his request for medical care, Plaintiff wrote "I need a grievance for this issue. . . ." (*Id.*) However, a member of the jail staff resolved the complaint by directing Plaintiff's request for medical care to Well Path. (*Id.*)

Upon review of all records associated with Plaintiff, Officer Diehl identified two IRFs filed on November 25 and 26, 2019 (after Plaintiff's complaint was filed). (*Id.* ¶ 8.) These both concerned his inmate account and were resolved informally shortly thereafter. (*Id.* ¶ 10.) In summary, Officer Diehl's records indicate that Plaintiff did not submit an IRF requesting a grievance form related to the content of his complaint at any point during the relevant time period or otherwise file a formal grievance. (*Id.*)

Thus, a review of the evidence demonstrates that Plaintiff did not properly exhaust his administrative remedies prior to initiating this lawsuit. In his complaint, Plaintiff acknowledges that he did not file a grievance concerning his medical care. (*See* Compl. at 8.) The affidavits of Captain Johnson and Officer Diehl, referencing the inmate handbook, clarify that it is Plaintiff's responsibility to submit an IRF requesting a grievance form to initiate the formal grievance process. (*See* Johnson Aff. ¶ 11; Diehl Aff. ¶ 9; Docket Entry 85-3 at 27-28 (inmate handbook stating that if an inmate is dissatisfied with the informal resolution of a complaint, he may request a grievance form by "submit[ting] an Inmate Request Form requesting a grievance form, stating the matter to be grieved, and detailing how the inmate has complied with the foregoing requirements").) While Plaintiff appears to have made an informal request for a grievance on two occasions, the record indicates that Plaintiff did not follow the proper procedures for obtaining and filing a formal grievance, as required by the

8

PLRA. *See Turner v. Clelland,* No. 1:15CV947, 2016 WL 6997500, at *8 (M.D.N.C. Nov. 30, 2016), *report and recommendation adopted sub nom. Turner, Jr. v. Clelland,* No. 1:15CV947, 2017 WL 913630 (M.D.N.C. Mar. 7, 2017) (citing *Woodford v. Ngo,* 548 U.S. 81, 84 (2006)) ("[A]n inmate must pursue each step of the established administrative procedure before filing a lawsuit."). Thus, Defendant Rogers' motion for summary judgment should be granted for this reason and for those that follow.

## B. Plaintiff's medical malpractice claims

### 1. North Carolina Rule of Civil Procedure 9(j)

Next, Defendant Rogers argues that he is entitled to summary judgement to the extent that Plaintiff's complaint contains claims against him for medical malpractice under North Carolina law because Plaintiff has not satisfied the certification requirements of North Carolina Rule of Civil Procedure 9(j). (Docket Entry 86 at 9.) Indeed, claims sounding in medical malpractice must comply with North Carolina Rule of Civil Procedure 9(j), which requires a plaintiff to include in his complaint an assertion that that an expert reviewed the medical care at issue and is willing to testify that the medical care did not comply with the applicable standard of care. *See* N.C. R. Civ. P. 9(j). Failure to comply with Rule 9(j) is grounds for dismissal. *See Littlepaige*, 528 Fed. App'x at 292; *Boula v. United States*, 1:11cv366, 2013 WL 5962935, at *2 (M.D.N.C. Nov. 7, 2013); *Moore v. Pitt Cnty. Mem. Hosp.*, 139 F. Supp. 2d 712, 713-14 (E.D.N.C.2001).

The only exception to this rule is where "[t]he pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*." N.C. R. Civ. P. 9(j)(3). "The doctrine of *res ipsa loquitor* applies when (1) direct proof of the cause of an injury is not

available, (2) the instrumentality involved in the accident is under the defendant's control, and (3) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." *Alston v. Granville Health Sys.*, 727 S.E.2d 877, 879 (N.C. Ct. App. 2012) (citation omitted); *see also Muhammad v. United States*, No. 5:11–CT–3126–FL, 2012 WL 3957473, at *6 (E.D.N.C. Sept. 10, 2012).

Here, Plaintiff's complaint contains no assertions regarding review of any of his medical records by a medical professional or potential expert witness. (*See generally* Compl.) Nor has Plaintiff alleged facts and circumstances that support the application of *res ipsa loquitur* to his claim. (*Id.*) "Plaintiff's status as a prisoner does not excuse his failure to comply with Rule 9(j)'s pre-filing certification requirements." *Simmons v. Shelton,* No. 1:13CV566, 2015 WL 2345593, at *4 (M.D.N.C. May 14, 2015) (citing *Muhammad*, 2012 WL 3957473, at *5 n.2). Thus, Defendant Rogers' motion for summary judgement should be granted to the extent that Plaintiff's complaint raises a claim for medical malpractice against him. *See Hill v. United States,* No. 5:08-CT-3070-D, 2010 WL 3075495, at *15 (E.D.N.C. Aug. 5, 2010) ("Accordingly, because [plaintiff] failed to comply with Rule 9(j) or plead facts to fall within the *res ipsa loquitur* exception, the court grants [defendant's] motion for summary judgment on plaintiff's . . . claim for medical malpractice.").

## 2. **Merits of Plaintiff's medical malpractice claim**

In addition, Defendant Rogers argues that setting aside the requirements of Rule 9(j), the factual record refutes Plaintiff's allegations of medical malpractice. (Docket Entry 86 at 10-11.) To succeed on a claim for medical malpractice in North Carolina, the plaintiff must show: "(1) the applicable standard of care; (2) a breach of such standard of care by the

10

defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." *Gunter v. S. Health Partners, Inc.*, No. 1:16CV262, 2021 WL 1110238, at *8 (M.D.N.C. Mar. 23, 2021) (quoting *Weatherford v. Glassman*, 500 S.E.2d 466, 468 (N.C. 1998)). Plaintiff's primary complaint is that he did not receive proper follow-up medical care for his wrist injury. (*See* Compl. at 5-7.) Plaintiff alleges that at his visit with Dr. Haddix on July 30, 2019, he was informed that he needed to return in six weeks for further evaluation and to schedule surgery, but that the jail medical staff and Defendant Rogers delayed in coordinating a second appointment, which negatively impacted his wrist. (*Id.*)

In response to these allegations, Defendant Rogers has submitted the affidavit of Dr. Muhammad Wasi Haq, who has been employed by Well Path as a physician since 2018 and has treated Plaintiff and reviewed Plaintiff's medical records. (Haq. Aff. ¶¶ 3-4, Docket Entry 82.) Dr. Haq acknowledges that Plaintiff suffered injuries to his arm during a car accident that occurred before he was incarcerated. (*Id.* ¶ 5.) Dr. Haq confirmed that Plaintiff attended a consultation with orthopedist Dr. Kevin Haddix on July 30, 2019. (*Id.* ¶ 10.) Following the consultation, Dr. Haddix provided a summary of the visit and recommendations for follow up to Plaintiff's Well Path healthcare providers. (*Id.* ¶ 11.) Contrary to Plaintiff's allegations, Dr. Haddix's report did not indicate that Plaintiff needed to return to his office for further care in six weeks, nor did it recommend surgery. (*Id.* ¶ 13; *see also* Docket Entry 82-1 ("Consulting Physician's Report" completed by Dr. Haddix on July 30, 2019).) The recommendations that Dr. Haddix did make, including an MRI of Plaintiff's left knee, were promptly ordered by Well Path staff. (Haq. Aff. ¶¶ 14, 16.)

Case 1:20-cv-00008-CCE-JLW   Document 91   Filed 06/14/21   Page 11 of 22

Dr. Haq examined Plaintiff on September 16, 2019. (*Id.* ¶ 17.) Plaintiff reported stiffness in his wrist, but no acute pain. (*Id.*) To address the stiffness, Dr. Haq adjusted Plaintiff's medications. (*Id.*) Based on the results of the MRI of Plaintiff's left knee, Dr. Haq referred Plaintiff for another appointment with Dr. Haddix, which occurred on January 8, 2020 (after Plaintiff filed this lawsuit). (*Id.* ¶¶ 17-18.) Following that appointment, Dr. Haddix completed another "Consulting Physician's Report," which indicated that Plaintiff's wrist was healing properly. (*Id.* ¶¶ 19, 21; *see also* Docket Entry 82-3.) Dr. Haddix did not recommend further evaluation for surgery or otherwise schedule surgery for Plaintiff. (*Id.* ¶ 20.)

In summary, Dr. Haq states that none of Plaintiff's medical needs were ignored by Well Path employees during the time period referenced in the complaint. (*Id.* ¶ 25.) On the contrary, Well Path employees provided prompt medical care to Plaintiff on 75 occasions. (*Id.* ¶ 24.) Based on his education, experience, personal knowledge of Plaintiff's medical history, and a review of Plaintiff's medical records, it is Dr. Haq's opinion that the medical attention Plaintiff received at GCDC "met all applicable standards of healthcare." (*Id.* ¶¶ 25-28.)

In his own affidavit, Defendant Rogers explains that the Guilford County Sheriff's Office contracts with Well Path to provide medical care to inmates housed at the GCDC. (Rogers Aff. ¶¶ 3, 5, Docket Entry 83.) Defendant Rogers was not personally involved in providing medical evaluations or medical care to Plaintiff, as this responsibility is delegated to the medical professionals employed by Well Path. (*Id.* ¶ 6.) Based on his review of the Dr. Haq's affidavit, Defendant Rogers states that upon information and belief, "Plaintiff has received and continues to receive the reasonable and necessary medical services to treat his injuries." (*Id.* ¶ 7.)

12

Thus, Defendant Rogers' evidence rebuts any allegation by Plaintiff that Defendants are liable for medical malpractice. Having not responded with any additional evidence, Plaintiff has not met his burden of establishing that a genuine issue of material fact exists as to whether to Defendants breached their duty of care to Plaintiff in their provision of medical care. Considering the evidence described above, the undersigned recommends that Defendant Rogers' motion for summary judgement be granted as to any claim of medical malpractice raised against him by Plaintiff's complaint.

### 3. Public official and governmental immunity

Defendant Rogers' final argument regarding Plaintiff's medical malpractice claims is that any such claims are barred due public official immunity (as to claims brought against Defendant Roger in his individual capacity) and governmental immunity (as to claims brought against him in his official capacity). (Docket Entry 86 at 11-13.) "In North Carolina, the doctrine of public official immunity 'protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties.'" *White v. City of Greensboro*, No. 1:18CV969, 2021 WL 1258402, at *17 (M.D.N.C. Apr. 5, 2021) (quoting *Campbell v. Anderson*, 576 S.E.2d 726, 730 (N.C. Ct. App. 2003). "[A] public official is entitled to immunity from suit in his individual capacity unless he 'engaged in discretionary actions which were allegedly: (1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate.'" *White v. City of Greensboro,* 408 F. Supp. 3d 677, 705 (M.D.N.C. 2019) (quoting *Smith v. Jackson Cnty. Bd. of Educ.,* 608 S.E.2d 399, 411 (N.C. Ct. App. 2005)).

13

To deny Defendant Rogers the protection of public official immunity at the summary judgment stage, there must exist a genuine issue of material fact as to whether his actions were corrupt, malicious, beyond the scope of his duties, in bad faith, or willful and deliberate. *See Campbell*, 576 S.E.2d at 730. The record is devoid of any such evidence. Plaintiff's sole allegation against Defendant Rogers is that he "verbally informed" Defendant Rogers of the inadequate medical care he was receiving and "no action was made" in response. (Compl. at 6.) Defendant Rogers does not recall ever having such a conversation with Plaintiff. (Rogers Aff. ¶ 4.) Nor did Defendant Rogers receive a grievance or other correspondence relating to Plaintiff's medical care at GCDC. (*Id.*) Thus, Defendant Rogers is entitled to public official immunity as to any medical malpractice claims brought against him in his individual capacity and his motion for summary judgment should be granted as to those claims. *See Campbell*, 576 S.E.2d 730 ("Where a complaint offers no allegations from which corruption or malice might be inferred, the plaintiff has failed to show an essential of his claim, and summary judgment is appropriate.").

Regarding Plaintiff's claims against Defendant Rogers in his official capacity, "[i]n North Carolina, governmental immunity serves to protect a municipality, as well as its officers or employees who are sued in their official capacity, from suits arising from torts committed while the officers or employees are performing a governmental function." *Schlossberg v. Goins*, 540 S.E.2d 49, 52 (N.C. Ct. App. 2000). "This immunity is absolute unless a municipality has consented to being sued or has otherwise waived its immunity." *White*, 2021 WL 1258402, at *39 (M.D.N.C. Apr. 5, 2021) (citing *Schlossberg*, 540 S.E.2d at 52). To overcome governmental immunity, a plaintiff must allege waiver of immunity in the complaint. *Paquette v. Cnty. of*

14

*Durham*, 573 S.E.2d 715, 717 (N.C. Ct. App. 2002). Here, Plaintiff failed to allege waiver of immunity by Defendant Rogers. (*See generally* Compl.) Nor has he provided evidence of any such waiver. Accordingly, governmental immunity bars Plaintiff's medical malpractice claims brought against Defendant Rogers in his official capacity, and Defendant Rogers' motion for summary judgment should be granted as to these claims for this additional reason. *See Stokes v. Harris,* No. 1:10CV935, 2014 WL 5149222, at *11 (M.D.N.C. Oct. 14, 2014).

## C. <u>Federal law claims</u>

Finally, Defendant Rogers argues that he is entitled to summary judgement as to the federal law claims Plaintiff raises against him in his individual and official capacities. (Docket Entry 86 at 13.) As a preliminary matter, while Plaintiff indicates that 42 U.S.C. § 1983 is the legal basis for his lawsuit, his complaint does not specify a particular constitutional or statutory violation. (*See* Compl. at 2, 5.) Considering Plaintiff's status as a pretrial detainee (*see* Compl. at 2), and because the factual allegations of Plaintiff's complaint revolve around inadequate medical treatment, the Court construes Plaintiff's complaint as raising a claim for deliberate indifference to a serious medical need in violation of the Fourteenth Amendment of the United States Constitution. *Shields v. Godfrey*, No. 1:18CV602, 2021 WL 512459, at *5 (M.D.N.C. Feb. 11, 2021) (clarifying that deliberate indifference claims brought by pretrial detainees are "evaluated under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment standard applicable to convicted prisoners"). "Historically, the United States Court of Appeals for the Fourth Circuit has applied the same analysis to Section 1983 deliberate indifference claims under the Fourteenth Amendment as under the Eighth Amendment." *Durand v. Charles*, No. 1:16CV86, 2018 WL 748723, at *11

(M.D.N.C. Feb. 7, 2018), *subsequently aff'd*, 733 F. App'x 116 (4th Cir. 2018) (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001)).

### 1. **Plaintiff's deliberate indifference claim against Defendant Rogers in his individual capacity**

Defendant Rogers argues that summary judgment should be granted as to Plaintiff's § 1983 claims against him in his individual capacity. (Docket Entry 86 at 20.) "To establish personal liability under § 1983 . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation omitted). In other words, "the official's own individual actions must have violated the Constitution." *Id.* (internal quotations omitted). Thus, to succeed on a claim for deliberate indifference against Defendant Rogers, Plaintiff must demonstrate that Defendant Rogers personally acted with "'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Regarding the objective component, a medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotations omitted). As for the subjective component, a defendant is deliberately indifferent if they knew that an inmate faced a risk of harm due to a serious medical need and the defendant's "actions were insufficient to mitigate the risk of harm to the inmate arising from [that] medical need[ ]." *Id.* (emphasis and internal quotation marks omitted); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) ("To prove deliberate indifference, plaintiffs must show that the official knew

16

of and disregarded an excessive risk to inmate health or safety.") (internal quotations omitted).

In addition,

> A plaintiff can also establish "a prima face case of deliberate indifference" where "'a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it.'" [*Scinto*, 841 F.3d at 226] (brackets and ellipsis in original) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)) . . . . "[A] significant delay in the treatment of a serious medical condition may, in the proper circumstances," constitute deliberate indifference. *Webb v. Hamidullah*, 281 Fed. App'x 159, 166 (4th Cir. 2008). "A[ constitutional] violation only occurs, however, if the delay results in some substantial harm to the patient. Thus, in order to defeat summary judgment on the delay issue, [a plaintiff i]s obligated to establish that the delay in his [treatment] caused him substantial harm . . . ." *Id.* at 166–67 (footnote omitted).

*Durand*, 2018 WL 748723, at *12.

As Defendant Rogers properly argues, the record does not establish that he was ever personally aware of Plaintiff's medical needs. (Docket Entry 86 at 15.) In his affidavit, Defendant Rogers explains that he "was not involved in providing medical care, medical evaluations or medical services to Plaintiff." (Rogers Aff. ¶ 6.) Inmate medical care at GCDC is exclusively handled by the medical professionals employed by Well Path, the jail's healthcare subcontractor, such that Defendant Rogers would not have been apprised of the details of Plaintiff's treatment plan. (*Id.*) As mentioned above, Plaintiff's sole allegation against Defendant Rogers as an individual is that Plaintiff verbally informed him about his medical problems and Defendant Rogers took no action in response. (*See* Compl. at 6.) In his affidavit, Defendant Rogers states that he does "not recall any personal contact or conversation with the Plaintiff. I never received any request for grievance, grievance form or other

17

correspondence from the Plaintiff regarding the medical services he received at [GCDC]." (Rogers Aff. ¶ 4.) Plaintiff has presented no evidence to contradict Defendant Rogers' sworn statement. Thus, in the absence of any evidence showing that Defendant Rogers "knew of and disregarded an excessive risk to [Plaintiff's] health and safety," Plaintiff has not established the subjective component of his deliberate indifference claim against Defendant Rogers. *Scinto*, 841 F.3d at 225. The undersigned is therefore unable to identify any constitutional violation arising from Defendant Rogers' personal actions.

Furthermore, the evidence submitted by Defendant Rogers shows that Plaintiff's constitutional rights were not violated by any of the Well Path Defendants. According to Well Path physician Dr. Haq, during the relevant time, Well Path addressed Plaintiff's medical needs on 75 occasions, and Plaintiffs concerns were "promptly addressed . . . within the applicable standard of care timeframe." (Haq. Aff. ¶¶ 24, 26.) Plaintiff's primary allegation of delayed medical treatment is that he did not receive a follow up appointment with Dr. Haddix to evaluate his need for wrist surgery six weeks after his July 30, 2019 appointment. (*See* Compl. at 5, 7.) However, the "Consulting Physician's Report" sent by Dr. Haddix to the Well Path staff following Plaintiff's appointment did not order any follow up in six weeks or make any mention of surgery. (Docket Entry 82-1.) Moreover, Plaintiff had another appointment with Dr. Haddix on January 8, 2020 (after Plaintiff filed this lawsuit), and the report from that appointment indicates that "everything looks stable" in reference to Plaintiff's wrist. (Docket Entry 82-3.) Thus, to the extent that Plaintiff's claim is based on delays in the treatment of his wrist, the record contradicts his allegations of delay and demonstrates that any delays he perceived did not cause him substantial harm.

18

Even if constitutional violations had occurred because of the actions of the Well Path Defendants, such violations would be insufficient to hold Defendant Rogers' personally liable, absent his personal knowledge and involvement in such deprivations. *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985) ("The doctrine of *respondeat superior* has no application under [§ 1983]."). Defendant Rogers has explained that he is not personally involved in decisions regarding Plaintiff's medical treatment. (Rogers Aff. ¶¶ 4, 6.) And importantly, as explained above, based on Plaintiff's allegations and the evidence in the record, the undersigned has determined that no violation of Plaintiff's constitutional rights occurred at the hands of any of the Defendants named in Plaintiff's complaint. Thus, Defendant Rogers is entitled to summary judgment as to any federal claims brought against him in his individual capacity. *See Williamson*, 912 F.3d 154, 172 (4th Cir. 2018) (holding that because the defendant attested to no personal involvement in the alleged injury and "there is no evidence to contradict [defendant's sworn statement[, plaintiff] thus falls short of establishing [defendant's] personal involvement in the alleged [constitutional] violations and [plaintiff's] claims against [defendant] must be rejected").

**2. Plaintiff's deliberate indifference claim against Defendant Rogers in his official capacity as Sheriff of Guilford County**

"[A] plaintiff may bring a Section 1983 action against governmental officials in their official or representative capacity." *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 469 (4th Cir. 2013). "[T]hese official-capacity suits are 'treated as suits against the [municipality].'" *Id.* (alteration in original) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Therefore, Plaintiff's official capacity claims against Defendant Rogers are claims against the Guilford County Sheriff's Office. *See Parker v. Burris*, No. 1:13CV488, 2015 WL 1474909, at *6 (M.D.N.C. Mar.

19

31, 2015), *report and recommendation adopted*, No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015) ("[A] suit against a sheriff in his official capacity constitutes a suit against a local governmental entity, i.e., a sheriff's office."). Therefore, to succeed on his federal law claims against Defendant Rogers in his official capacity, Plaintiff must establish that "the alleged constitutional violations resulted from an official policy or custom of the Sheriff's office." *Evans v. Guilford Cnty. Det. Ctr.*, No. 1:13CV499, 2014 WL 4641150, at *3 (M.D.N.C. Sept. 16, 2014); *see also Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) ("[N]ot every deprivation of a constitutional right will lead to municipal liability. Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach.") (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

"A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle*, 326 F.3d at 471 (quoting *Carter,* 164 F.3d at 217)). Here, Plaintiff has not alleged that an official policy caused his injury, or that a failure to train by the Guilford County Sheriff's Office was the source of his harm. Plaintiff does not demonstrate that Defendant Rogers had final policymaking authority with regard to any particular policy. Nor does Plaintiff's complaint make any mention widespread practices that could constitute an official custom. As Defendant Rogers properly points out, the allegations in Plaintiff's complaint are limited to his individual situation. (*See* Docket Entry 86 at 19.)

20

Thus, Plaintiff's claim against Defendant Rogers in his official capacity fails. *See Blackwell v. Houser*, No. 5:16-CV-67-FDW, 2017 WL 4684188, at *8 (W.D.N.C. Oct. 18, 2017) ("Generally, the failure to allege a specific policy or custom is fatal to an official capacity claim against a government unit[.]"), *aff'd*, 719 F. App'x 263 (4th Cir. 2018).

Moreover, the undersigned has already determined that Plaintiff's constitutional rights were not violated by any of the Defendants named in his action. Indeed, "municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer.'" *Waybright v. Frederick City*, 528 F.3d 199, 203 (4th Cir. 2008) (quoting *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986)). Having found no underlying constitutional injury, Defendant Rogers is not subject to liability in his official capacity.[5]

As a final matter, one of the last sections of Defendant Rogers' brief in support of his motion argues that to the extent that Plaintiff's complaint alleges a violation of federal rights based on the jail staff's failure to provide him with a grievance (*see* Compl. at 8), such a claim is without merit because Plaintiff "[did] not have a constitutional right to participate in grievance proceedings." (Docket Entry 86 at 20 (citing *Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).) Indeed, the Fourth Circuit has clearly stated that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Thus, summary

---

[5] Defendant Rogers has also argued that to the extent Plaintiff's complaint requests relief in the form of compensatory and punitive damages (*see* Compl. at 8), Defendant Rogers cannot be liable for such damages in his official capacity. (*See* Docket Entry 86 at 21.) Indeed, compensatory and punitive damages are both unavailable in official capacity suits brough pursuant to § 1983. *See Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995)). Having recommended that Defendant Rogers' motion for summary judgment be granted as to all of Plaintiff's claims, the undersigned need not address this argument in further detail.

judgment should also be granted as to any claim Plaintiff's complaint purports to raise based on his alleged lack of access to the grievance process.

## III.  CONCLUSION

Therefore, for the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendant Rogers' motion for summary judgment (Docket Entry 81) be **GRANTED**, and because all other Defendants have already been terminated, that this action be **DISMISSED.**

_____
Joe L. Webster
United States Magistrate Judge

June  14, 2021
Durham, North Carolina

22